# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALONZO GEORGE DAVIS,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:12-cv-01763-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 20, 21, 22) |

## I.

## INTRODUCTION

Plaintiff Alonzo George Davis ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from bipolar disorder and schizophrenia. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on July 1, 2009, and a Title XVI application for supplemental security income on July 7,

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 9, 14.)

2009.[2]  (AR 73, 83.)  Plaintiff's applications were initially denied on August 22, 2009, and denied upon reconsideration on March 9, 2010.  (AR 119-23, 129-32.)  Plaintiff requested and received a hearing before Administrative Law Judge James P. Berry ("the ALJ").  Plaintiff appeared for a hearing on June 9, 2011.  (AR 34-63.)  On June 22, 2011, the ALJ found that Plaintiff was not disabled.  (AR 14-27.)  The Appeals Council denied Plaintiff's request for review on August 22, 2012.  (AR 5-7.)

### A. Hearing Testimony

#### 1. Examination of Plaintiff

Plaintiff appeared for a video hearing on June 9, 2011 and was represented by counsel Geoffrey Hayden.  (AR 36.)  Plaintiff was born on January 22, 1965 and was 46 years old on the date of the hearing.  (AR 39.)  Plaintiff graduated high school and was enrolled in special education classes.  (AR 39-40.)

Plaintiff is 5' 8'' tall and weighs 238 pounds.  (AR 40.)  Plaintiff lives with his wife, children, and his wife's parents.  (AR 55.)  Plaintiff rarely goes out with his family on outings.  (AR 55-56.)  Plaintiff testified that he had not driven in a while because he has tremors, shakes and sometimes fades out.  (AR 40.)

Plaintiff has had a number of jobs including working as a checker in a supermarket, bar tender at a hotel, pizza maker in a restaurant, car washer at a car wash, and cook for Home Town Buffett.  (AR 41-42.)  Plaintiff stated that he was terminated for having attitude, getting into fights with co-workers, not showing up, and not calling in.  (AR 42.)  Prior to being incarcerated, Plaintiff had worked in the oil fields for about eighteen months as a helper.  (AR 54-55.)  Plaintiff states that he is not currently working because he does not have the notion that he wants to work anymore; the passion is not there; and he does not want to be there anymore.  (AR 42.)

Plaintiff has had suicidal thoughts for quite a while.  (AR 42.)  Plaintiff takes ten to twelve different medications for his various health and mental conditions.  (AR 43.)  Plaintiff's

---

[2] The administrative record contains documents pertaining to a previous application for benefits filed on September 6, 2006 which are not at issue in the current appeal.  Since the prior records pre-date the alleged on set in this action by over two years, neither the ALJ nor Plaintiff address them.  (ECF No. 20 at 4.)

medications cause him to have diarrhea, loss of thoughts, confusion, and trouble concentrating. (AR 43.) Plaintiff testified that he is unable to sit and do anything for that long. (AR 43.) Plaintiff is able to watch television. (AR 44.) If Plaintiff talks with someone he will not remember what they were talking about at a later time. (AR 44.)

Plaintiff was first diagnosed with mental problems in 1994. (AR 44.) Plaintiff has a significant history of drug and alcohol abuse and has used methamphetamine, cocaine and marijuana. (AR 44.) Plaintiff attended different programs and has been clean for over five years. (AR 44-45.) Plaintiff has had difficulty with discipline his entire life. (AR 45-46.) Plaintiff was always getting in trouble, being suspended, and has been incarcerated for being under the influence or being in possession of drugs and several "spousal cases." (AR 46.)

Plaintiff has been committed to a mental hospital on three occasions. (AR 45.) Plaintiff is unable to remember the dates, but was committed due to having suicidal thoughts. (AR 45.) Plaintiff was committed to a mental hospital, Crestwood, in Bakersfield in March of 2009. (AR 46.)

Plaintiff has been seeing Dr. Feldman[3] since he left Crestwood in 2009. (AR 47.) Plaintiff is taking Lithium, Wellbutrin, Risperdal and Tegretol. (AR 47.) Plaintiff has been hearing a man's voice that tells him to do things since 1994. (AR 48.) If someone is really threatening Plaintiff then the voice tells him to hurt them. (AR 48.) The voice tells him to hurt himself. (AR 48.)

Plaintiff tries to get along with other people. (AR 48.) Plaintiff has gotten into arguments when he feels threatened and needs to protect himself. (AR 48.) Plaintiff has no trouble being in crowds. (AR 49.) Plaintiff is unable to remember what he talked about with someone after five minutes. (AR 49.) Plaintiff has trouble following instructions. (AR 49.) Plaintiff has crying spells a couple times per day. (AR 49.)

On a normal day, Plaintiff sleeps about sixteen hours. (AR 49.) He gets up and eats a bowl of cereal, watches television for a few hours and then goes back to bed until it is time to get

---

[3] The transcript incorrectly identifies Dr. Feldman as Dr. Philman.

up for dinner.  (AR 49-50.)  After dinner, Plaintiff will go and sit for a while and then go back to bed.  (AR 50.)  Plaintiff goes to the movies with friends once every two to three months.  (AR 50.)  His friends try to get him to do things but he just does not feel like it.  (AR 50.)  Plaintiff used to work out, but he has not exercised in years.  (AR 50.)  There are times when Plaintiff feels better and there are days when he does not want to even get out of bed.  (AR 50.)

Plaintiff lost his job when he violated his parole by failing to sign up for probation and went to jail.  (AR 51.)  Plaintiff was sentenced to six months and spent three months in jail.  (AR 52.)  Plaintiff got off probation in June 2010.  (AR 51.)  After Plaintiff went to jail, he lost his job, his vehicle was confiscated and everything just came crashing down.  (AR 52.)  His probation officer told him to find a job, but Plaintiff asked him where he would find a job with his background.  (AR 52.)  Plaintiff wanted to jump off a roof and that is when he was admitted to the psychiatric hospital.  (AR 52-53.)  Plaintiff's probation officer left him alone after he was released from Crestwood.  (AR 53.)

Plaintiff stopped seeing Dr. Feldman when the program did not have funds anymore. (AR 53.)  Plaintiff is being treated by his medical doctor until they can get him assigned to a new psychiatric doctor.  (AR 54.)

2.   <u>Examination of Vocational Expert</u>

Linda Ferra, a vocational expert ("VE"), also testified at the hearing.  (AR 57-61.)  The VE classified Plaintiff's prior employment as a bar tender, semi-skilled, SVP 3; kitchen helper, un-skilled, SVP 2; cook, skilled, SVP 7; automobile washer, un-skilled, SVP 1; and oil field laborer, un-skilled, SVP 1.  (AR 57-58.)

The VE was presented with a hypothetical of an individual of Plaintiff's age, education and work experience with the residual functional capacity to lift and carry 100 pounds occasionally and 50 pounds frequently; the ability to stand, walk, sit six hours each; able to perform simple repetitive tasks as well as maintain attention, concentration, persistence, and pace; able to relate and interact with others but only able to have occasional contact with the public; and retains the ability to adapt to usual changes in work settings and adhere to safety rules.  (AR 58.)  The VE opined that this individual would be able to perform Plaintiff's previous

4

jobs of kitchen helper and automobile washer. (AR 58.) Plaintiff could work as an industrial cleaner, un-skilled, with approximately 109,000 jobs in California and over one million in the nation; a packager, un-skilled, with approximately 22,000 jobs in California and 220,000 in the nation; and a swamper or truck driver helper, un-skilled, with 90,000 jobs in the state and 900,000 in the nation. (AR 59.)

The VE was presented with a second hypothetical of an individual with the same vocational parameters, but this individual had the capacity to lift less than 50 pounds occasionally; able to stand, walk, and sit six hours each; difficulty maintaining attention and concentration. (AR 59-60.) The difficulty maintaining concentration would affect at least a third of an eight hour day and the individual would have difficulty maintaining persistence and pace. (AR 60.) The VE opined that this individual would not be able to perform any of Plaintiff's past work and there would be no jobs available that this individual could perform. (AR 60.)

Plaintiff's counsel presented a hypothetical of an individual with markedly limited ability to maintain attention and concentration for extended periods; moderately limited ability to perform activities within his schedule and maintain regular attendance; and markedly limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. (AR 60.) The VE opined that this individual could not perform any job. (AR 60-61.)

Counsel presented a second hypothetical of a person with the same age, education, and experience of Plaintiff who had moderate problems with concentration, persistence, and pace; moderate problems working with others; concentration, persistence and pace could be no more than four hours with breaks; and moderate problems with social functioning. (AR 61.) The VE opined that there would be no jobs that this individual could perform. (AR 61.)

**B.  ALJ Findings**

The ALJ found that Plaintiff has severe impairments of bipolar disorder and schizophrenia.[4] (AR 18.) Plaintiff's impairments do not meet or medically equal one of the

---

[4] The Court notes that the ALJ decision contains all pages, however they are out of numerical order in the record.

listed impairments. (AR 20.) Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following limitations: can lift and carry 100 pounds occasionally and 50 pounds frequently; stand, sit, and walk for 6 hours each in an 8 hour day; simple repetitive tasks, maintain attention, concentration, persistence, and pace; relate to and interact with others but have only occasional contact with the general public; adapt to usual changes in work settings; and adhere to safety rules. (AR 21.) Plaintiff is capable of performing past relevant work as a kitchen helper, medium unskilled. (AR 25.)

### C.   Relevant Medical History

After being released from Crestwood on March 8, 2009, (AR 431), Plaintiff began treatment with Dr. Feldman on March 25, 2009. (AR 458-460.) On this visit, Plaintiff blamed "the system" because nothing was going right in his life. (AR 458.) Plaintiff reported that he has been hearing voices since 2004. (AR 458.) At times the voices are supportive and encouraging, that of his mother, and other times he hears negative voices saying "do it." (AR 458.) Plaintiff reported that his concentration was fair; he was able to watch television but did not feel like reading. (AR 458.)

Plaintiff reported previous mental health treatment history, but had not been on outpatient medications since 2006. (AR 458.) Plaintiff's mood was initially significantly depressed and he sobbed intensely when talking about his losses, but by the end of the interview his mood appeared brighter. (AR 459.) Plaintiff has ongoing auditory hallucinations and some paranoid thoughts about the legal and justice systems. (AR 459.) Plaintiff had intermittent homicidal and suicidal ideation. (AR 459.) Plaintiff was alert and oriented, with average intelligence. (AR 459.)

Dr. Feldman saw Plaintiff again on April 30, 2009. (AR 461-62.) He reported that he was doing pretty good. (AR 461.) Plaintiff was compliant with his medication with no side effects. (AR 461.) His mood was sad and anxious and he was having auditory hallucinations and racing thoughts. (AR 461.) Examination was unremarkable and Plaintiff was noted to have good insight, judgment, and memory; and attention, concentration and orientation were intact. (AR 461.) Plaintiff's disability was mild. (AR 462.)

On May 28, 2009, Plaintiff reported restlessness due to his medications. (AR 463.) Plaintiff denied having auditory hallucinations. (AR 463.) He reported sleeping okay. (AR 463.) Mood was euthymic[5] and the examination was unremarkable, other than some increased psychomotor findings. (AR 463.) Plaintiff was noted to have good insight, judgment, and memory; and attention, concentration and orientation were intact. (AR 463.) Plaintiff's disability was moderate and Dr. Feldman noted that he was unable to work. (AR 464.)

On June 4, 2009, Plaintiff reported he was feeling much better. (AR 465.) His medication compliance was good with some tongue problems. (AR 465.) Plaintiff's examination was unremarkable other than some psychomotor findings and Plaintiff was having occasional auditory hallucinations. (AR 465.) Plaintiff was noted to have good insight, judgment, and memory; and attention, concentration and orientation were intact. (AR 465.) Plaintiff's disability was moderate and Dr. Feldman noted that he was unable to work. (AR 466.)

On June 18, 2009, Plaintiff reported no side effects from his medication and mild auditory hallucinations. (AR 467.) Plaintiff's examination was unremarkable. (AR 467.) Plaintiff was noted to have good insight, judgment, and memory; and attention, concentration and orientation were intact. (AR 467.) Plaintiff's disability was mild and Dr. Feldman noted that he was unable to work. (AR 468.)

On August 19, 2009, Dr. Franco prepared a Psychiatric Review Technique. (AR 507-17.) Dr. Franco found that Plaintiff had mild restriction of activities of daily living and moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace. (AR 515.) Plaintiff had one or two repeated episodes of decompensation of extended duration. (AR 515.)

On this same date, Dr. Franco also prepared a mental residual functional capacity assessment. (AR 519-21.) Plaintiff was found to be moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention

---

[5] Moderation of mood, not manic or depressed. Stedman's Medical Dictionary 678 (28th Ed. 2006).

1 and concentration for extended periods, work in coordination with or proximity to others without
2 being distracted by them, and interact appropriately with the general public. (AR 519-20.)
3 Plaintiff was found to be able to understand and remember simple work tasks, sustain
4 concentration and attention for up to 4 hour increments with customary work breaks, adapt to
5 routine changes in a work setting, set realistic goals, and make plans independent of others. (AR
6 521.) Plaintiff would need limited public contact, but could engage with supervisors and co-
7 workers. (AR 521.)

8    Dr. Franco also completed a case analysis on this date. (AR 522-24.) Plaintiff was found
9 to be doing well since his discharge from the hospital and his symptoms had stabilized by his
10 own reports. (AR 524.) The findings during his doctors' visits were within normal limits. (AR
11 524.) His disability level had varied from mild to moderate with a finding of mild at the last
12 visit. (AR 524.) The treating physician had indicated Plaintiff was unable to work, but there was
13 no objective rational as to why all his findings were within normal limits and Plaintiff was
14 compliant with treatment. (AR 524.) Dr. Franco found that Plaintiff might do best with limited
15 public contact, but would not have difficulties with supervisors. (AR 524.)

16    Plaintiff saw Dr. Feldman on August 20, 2009. (AR 531-32.) Plaintiff reported
17 restlessness due to his medications. (AR 531.) His mood was anxious and irritable. (AR 531.)
18 He reported poor sleep. (AR 531.) Results of the examination were within normal limits other
19 than Plaintiff had rapid speech, was anxious with racing thoughts, and had paranoid ideation and
20 auditory hallucinations. (AR 531.) Plaintiff was noted to have good insight, judgment, and
21 memory; and attention, concentration and orientation were intact. (AR 531.) Plaintiff's
22 disability was moderate and Dr. Feldman noted that he was unable to work. (AR 532.)

23    On August 27, 2009, Plaintiff reported he was feeling better, less anxious and anger.
24 (AR 533.) Plaintiff reported no side effects from his medication. (AR 533.) Other than rapid
25 and loud speech and auditory hallucinations, the examination was unremarkable. (AR 533.)
26 Plaintiff was noted to have fair insight, and good judgment, and memory; and attention,
27 concentration and orientation were intact. (AR 533.) Plaintiff's disability was moderate and Dr.
28 Feldman noted that he was unable to work. (AR 534.)

1     Plaintiff was seen in September 2009, and reported that he was doing okay with no side
2 effects from his medications. (AR 535.) Plaintiff was feeling sad and reported occasional
3 auditory hallucinations and racing thoughts. (AR 535.) Other than the self-reported symptoms,
4 Plaintiff's examination was unremarkable. (AR 535.) Plaintiff was noted to have good insight,
5 judgment, and memory; and attention, concentration and orientation were intact. (AR 535.)
6 Plaintiff's disability was moderate and Dr. Feldman noted that he was unable to work. (AR
7 536.)

8     On October 14, 2009, Dr. Feldman completed a Mental Assessment. (AR 574-78.) Dr.
9 Feldman stated that Plaintiff was moderately limited in his ability to understand and remember
10 detailed instructions, perform activities within a schedule, maintain regular attendance and be
11 punctual within customary tolerances, sustain an ordinary routine without special supervision,
12 and to ask simple questions or request assistance. (AR 574-76.) Plaintiff was found to be
13 markedly limited in his ability to carry out detailed instructions, maintain attention and
14 concentration for extended periods, to work in coordination within a proximity to others without
15 being distracted by them, to complete a normal work-day and work-week without interruptions
16 form psychologically based symptoms and to perform at a consistent pace without an
17 unreasonable number and length of rest periods, to interact with the general public, to accept
18 instructions and respond appropriately to criticism from supervisors, to get along with coworkers
19 or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to
20 changes in the work setting. (AR 575-77.)

21     On October 22, 2009, Plaintiff reported no side effects from his medication. (AR 537.)
22 Plaintiff denied auditory hallucinations but was having racing thoughts. (AR 537.) Plaintiff
23 reported that he was feeling sad, anxious, angry, irritable, and volatile and that he was sleeping
24 12 hours plus. (AR 537.) Plaintiff's examination was unremarkable. (AR 537.) Plaintiff was
25 noted to have fair insight and judgment, and good memory. (AR 537.) Attention, concentration
26 and orientation were intact. (AR 537.) Plaintiff's disability was severe and Dr. Feldman noted
27 that he was unable to work. (AR 538.) Dr. Feldman changed Plaintiff's medication regimen.
28 (AR 538.)

Plaintiff was seen again on October 28, 2009, and reported that he had gone to Las Vegas because his aunt was ill and in the hospital. (AR 539.) Plaintiff reported he was doing well with no side effects from his medication and his sleep was okay. (AR 539, 540.) Plaintiff did report he was feeling anxious. (AR 539.) Plaintiff's examination was unremarkable. (AR 539.) Plaintiff was noted to have good insight, judgment, and memory; and attention, concentration and orientation were intact. (AR 539.) Plaintiff's disability was moderate. (AR 540.)

On November 10, 2009, Plaintiff had missed some medication and reported feeling sad and anxious with auditory hallucinations and paranoid ideation. (AR 541.) Other than rapid loud speech, an anxious mood and racing thought process and auditory hallucinations, the examination was within normal limits. (AR 541.) Dr. Feldman did not note any findings for judgment, attention, concentration, orientation, or judgment. (AR 541.) Plaintiff's insight was good to fair and memory was good. (AR 541.) Plaintiff's disability was moderate and Dr. Feldman noted that he was unable to work. (AR 542.)

Plaintiff returned on January 13, 2010. Plaintiff had not been seen in two months and during this time was not taking his medication as prescribed and reported that he was sad and irritable. (AR 543, 544.) Plaintiff's speech was rapid and pressured and his mood was irritable. (AR 543.) Plaintiff had racing thoughts, with paranoid ideation and auditory hallucinations. (AR 543.) Plaintiff was noted to have fair insight, poor judgment, and good memory. (AR 543.) Attention, concentration and orientation were intact. (AR 543.) Plaintiff's disability was severe and Dr. Feldman noted that he was unable to work. (AR 543.)

Plaintiff was seen on January 21, 2010 and was doing a little better. (AR 545.) He had missed two days of his medication. (AR 546.) Plaintiff's examination was unremarkable. (AR 545.) Plaintiff was noted to have fair insight, and good judgment and memory. (AR 545.) Attention, concentration and orientation were intact. (AR 545.) Plaintiff's disability was moderate and Dr. Feldman noted that he was unable to work. (AR 546.)

A case analysis was done on February 8, 2010. (AR 570-73.) The reviewer found that the Dr. Franco's August 19, 2009 findings were an accurate representation of Plaintiff's current mental status. (AR 573.)

## III.

## LEGAL STANDARD

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by not providing legally sufficient reasons for rejecting the opinion of Plaintiff's treating physician, Dr. Feldman, and in his analysis of Dr. Franco's opinion. (Plaintiff's Opening Brief 12-16, ECF No. 20.) The Commissioner counters that the ALJ properly considered the evidence and gave legally sufficient reasons to reject the opinion of Dr. Feldman. (Defendant's Cross-Motion for Summary Judgment 6-8, ECF No. 21.) Further, the Commissioner argues that the ALJ properly construed the opinion of Dr. Franco and

11

1 that Plaintiff is providing his own interpretation of the evidence which does not negate the
2 validity of the ALJ's interpretation of the evidence.  (Id. at 8-9.)  Plaintiff replies the reasons
3 given by the ALJ to support his decision do not show that he had improved to the point that he
4 was actually able to work. (Plaintiff's Reply 3-4, ECF No. 22.)

### A. The ALJ Did Not Err in Rejecting the Opinion of Dr. Feldman

Initially, Plaintiff contends that the ALJ erred by not providing legally sufficient reasons for rejecting the opinions of Dr. Feldman.  The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  In general, "a treating physician's opinion is entitled to greater weight than that of a nontreating physician because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Plaintiff contends that the ALJ erred by rejecting Dr. Feldman's October 14, 2009 mental assessment and opinions that Plaintiff was unable to work.  (ECF No. 20 at 12.)  In rejecting Dr. Feldman's opinion, the ALJ stated that the opinion of the treating "psychologist concerning the nature and severity of an impairment is entitled to appropriate consideration . . . if it is well-supported and not internally inconsistent or inconsistent with other pertinent evidence.  However, speculation as to employability carries no valuable probative weight, and the ultimate determination of disability is specifically reserved to the commissioner. . . ."  (AR 23.)  The ALJ found that "Dr. Feldman's conclusions are not supported by his own treatment records wherein it is indicated numerous times that the claimant is showing improvement with treatment (as discussed above), medication, counseling, and attends Alcoholics Anonymous, Narcotics Anonymous and TAASK."  (AR 23.)  The ALJ discussed that Plaintiff's medical records demonstrate that he was reporting feeling better, having no auditory hallucinations, and his

12

insight, memory, judgment and attention and concentration were noted to be good and intact. (AR 22-23.)

There is substantial evidence in the medical record to support the ALJ's finding that Dr. Feldman's conclusions are not supported by his treatment notes. Dr. Feldman completed the Mental Assessment on October 14, 2009. At this time, aside from the initial visit, Dr. Feldman had seen Plaintiff on six occasions. During these visits, Plaintiff had reported that he was doing well with no side effects from his medication (AR 461, 533), and was feeling much better (AR 465). Other than one occasion where Dr. Feldman had found Plaintiff's insight to be fair (AR 533), Dr. Feldman had found Plaintiff to have good insight, judgment, and memory; and that Plaintiff's attention, concentration and orientation were intact (AR 461, 463, 467, 531, 535). During this time period, Dr. Feldman had found Plaintiff's disability to be mild (AR 462, 468) or moderate (AR 464, 532, 534, 536).

Plaintiff contends that the ALJ's statements that the majority of Dr. Feldman's findings on Plaintiff's mental status were inconsistent with his opinion is a medical opinion outside the ALJ's expertise. However, if the treating physician's recorded observations and opinions regarding the plaintiff's capabilities contradict the stated limitations, such a discrepancy is a clear and convincing reason to reject the doctor's opinion. Bayless, 427 F.3d at 1216. For example, Dr. Feldman's October 14, 2009 Mental Assessment found that Plaintiff was markedly limited in his ability to carry out detailed instructions and maintain attention and concentration for extended periods. (AR 575.) However, all the treatment notes indicate that Plaintiff's memory was good and his attention and concentration were intact. (AR 461, 463, 465, 467, 531, 533, 535, 537, 539, 541, 543, 545.)

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Chaudhry v. Asture, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir.2009)). Dr. Feldman's clinical findings do not support the severity of the limitations that were indicated on the October 14, 2009 Mental Assessment. The ALJ provided "specific and legitimate reasons" supported by substantial evidence in the record for

rejecting the opinion of Dr. Feldman.

Further, while Plaintiff argues that the ALJ erred in failing to give weight to Dr. Feldman's opinion that Plaintiff was unable to work. "The treating physician's opinion is not . . . necessarily conclusive as to either physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). While Dr. Feldman checked the box that Plaintiff was unable to work, the ALJ properly considered Dr. Feldman's clinical findings which did not support the inability to work.

The ALJ properly considered that Plaintiff showed improvement when he was taking his medication and that he was not entirely compliant in his medication regimen. (AR 22-24.) This is consistent with the record which shows those times where Plaintiff's disability was found to be severe or his condition had deteriorated were associated with his failure to comply with his medication regimen. (AR 538, 543, 546.)

Plaintiff argues that the ALJ's erred because he did not describe how findings regarding Plaintiff travelling to Las Vegas and his ability to care for his four minor children are inconsistent with Dr. Feldman's opinion. However, the ALJ rejected Dr. Feldman's opinion "because Dr. Feldman's conclusions are inconsistent with his own treatment records and the other medical evidence of record." (AR 23.) The ALJ did not err in affording no weight to the opinion of Dr. Feldman. (AR 23.)

**B.  The ALJ Did Not Err in Analysis of Dr. Franco's Opinion**

Plaintiff argues that the ALJ erred in analyzing Dr. Franco's opinion. (ECF No. 20 at 16.) Plaintiff contends that Dr. Franco opined that Plaintiff "can perform simple repetitive work and could sustain concentration, persistence, and pace for up to 4 hours at a time." (Id. at 15.) Plaintiff states that at the hearing his attorney presented this hypothetical to the VE who found that there would be no work available for this individual. (Id.)

In determining Plaintiff's residual functional capacity, the ALJ found that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties." (AR 20.) The ALJ found that Plaintiff "can sustain focused attention and concentration for periods sufficient to permit the timely and appropriate completion of tasks round [sic] in routine, simple and

repetitive activities, but not detailed or complex work settings." (AR 20.) The ALJ determined that Plaintiff had the ability to maintain attention, concentration, persistence and pace. (AR 21.) This is consistent with the hypothetical presented to the VE during the hearing, which included the ability to perform simple repetitive tasks as well as maintain attention, concentration, persistence, and pace; able to relate and interact with others but only able to have occasional contact with the public; and retains the ability to adapt to usual changes in work settings and adhere to safety rules. (AR 58.)

This is not inconsistent with the assessment of Dr. Franco who opined that Plaintiff would be able to sustain concentration and attention for up to 4 hour increments with the customary work breaks. (AR 521.) While Plaintiff's counsel's hypothetical included the limitation that concentration, persistence and pace could be no more than four hours with breaks, Dr. Franco did not find that Plaintiff's limitation was no more than 4 hours with breaks, but rather that Plaintiff had the ability to work in four hour increments with customary work breaks. The ALJ's functional capacity assessment of Plaintiff is consistent with the opinion of Dr. Franco and is supported by substantial evidence in the record.

### C. The ALJ Properly Considered Plaintiff's Credibility

Plaintiff contends that the ALJ did not point out how Plaintiff's activities were inconsistent with Dr. Feldman's opinion. "An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). Once this test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of her symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155,

1160 (9th Cir. 2008).

The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of symptoms; factors that cause or aggravate the symptoms; the effectiveness or side effects of any medication; other measures or treatment used for relief; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

The ALJ stated that when a claimant's statements about the intensity, persistence, or functionally limiting effects of symptoms are not substantiated by the medical evidence, he must make a finding on the credibility of the statements based upon the entire record. (AR 21.) The ALJ considered Plaintiff's statements that he has problems talking, hearing, with memory, completing tasks, concentrating, understanding, following instructions, using his hands, getting along with others, and medication side effects such as black outs, diarrhea, confusion, loss of thoughts, and problems with concentration which were not supported by the medical record or the ALJ's observations during the hearing. (AR 21-25)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 22.) The ALJ considered Plaintiff's activities: that he was able to drive to Las Vegas, care for four minor children, the oldest of whom has cerebral palsy, and that the majority of the observations of the claimant's medical status were essentially within normal limits in determining that Plaintiff's limitations were not as severe as

he claimed. (AR 23.) Plaintiff was not compliant in taking his prescribed medications and alleges serious side effects from his medications including "blacking out", confusion, diarrhea, loss of thoughts, and problems with concentration (testimony) that are not supported by the medical record. The ALJ noted that on numerous occasions the medical records shows no reported medication side effects and that if Plaintiff were having such severe side effects he would have reported them to his doctor. (AR 24.)

There is substantial evidence in the medical record to support the finding that Plaintiff had some instances of non-compliance, including a two month period where he did not seek treatment. (AR 541, 543.) Additionally, the record supports the ALJ's finding that Plaintiff did not report the alleged side effects to his physician. Reviewing the medical record, Plaintiff reported side effects of restlessness (AR 463, 531) and increased psychomotor activity (AR 465, 467) from his medication on four occasions. Plaintiff reported no side effects from his medication on the other visits with Dr. Feldman. (AR 461, 533, 535, 537, 539.) Notably, none of the serious side effects Plaintiff contends he experiences were reported to Dr. Feldman.

Further, the ALJ's conclusions were influenced by Plaintiff's appearance and demeanor during the hearing. (AR 24.) Plaintiff alleges that "he has problems talking, hearing, with memory, concentration, understanding, following instructions, getting along with others, and paying attention. . . . During the hearing, [Plaintiff] displayed none of these problems, he was able to speak clearly, heard, understood, and responded to [the ALJ's] questions intelligently, coherently and cooperatively. [Plaintiff] was able to concentrate, persist, and pay attention for over 30 minutes, contrary to his sister's report that he was able to pay attention for only 10 minutes." (AR 25.) This finding is also consistent with the medical records finding Plaintiffs' memory to be good and his attention and concentration to be intact.

To the extent that Plaintiff argues that the evidence supports his conclusion that he was unable to work, where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's conclusion. Burch, 400 F.3d at 679. Substantial evidence supports that ALJ's credibility determination that Plaintiff's symptoms were not as severe as he claimed.

///

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ did not err in determining that Plaintiff was not disabled by his bi-polar disorder and schizophrenia as defined in the Social Security Act. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Alonzo George Davis. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  **April 25, 2014**

UNITED STATES MAGISTRATE JUDGE